UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| KATO ENGINEERING, INC., | CIVIL NO. 18-1290 (MJD/DTS) |
| Plaintiff and Counterclaim Defendant, | |
| v. | REPORT AND RECOMMENDATION |
| DAVID F. HANLEY, | |
| Defendant, Counterclaim Plaintiff and Third-Party Plaintiff, | |
| v. | |
| NIDEC AMERICAS HOLDING CORPORATION, | |
| Defendant and Third-Party Defendant. | |

Kevin Conneely, Esq., Stinson Leonard Street, 50 South Sixth Street, Suite 2600, Minneapolis, MN 55402, for Plaintiff

Sipiwe Jefferson, Blackwell Burke PA, 431 South Seventh Street, Suite 2500, Minneapolis, MN 55415, for Defendants

This matter is before the Court on Defendant David Hanley's Motion for Temporary Restraining Order and Preliminary Injunction [Docket No. 30].[1] The Court

---

[1] At the pretrial conference, counsel for Hanley orally amended the motion to be for a temporary restraining order only, not for a preliminary injunction.

1

held a hearing on August 23, 2018.[2] For the reasons stated below and on the record at the hearing, it is recommended that the motion be denied because Hanley has not satisfied the *Dataphase* factors to the level necessary to warrant injunctive relief, and the particular mandatory injunctive relief he requests is inappropriate and disconnected from the claims at issue.

## BACKGROUND

David Hanley worked at Kato Engineering, Inc. as an engineer and sales support person for eleven years. Kato's initial job offer letter to Hanley dated February 2, 2007 stated that he would be required to sign a non-compete agreement. Docket No. 32-1. Hanley accepted the job offer in writing on February 22, 2007. *Id.* He started work at Kato on March 12, 2007. Hanley Counterclaim ¶ 8, Docket No. 22. Kato presented the non-compete agreement to Kato on March 23, 2007 and he signed it that day. Docket No. 1-2 (agreement); Hanley Decl. ¶ 16, Docket No. 32. Hanley states that no additional or independent consideration was provided to him for the non-compete [Hanley Decl. ¶¶ 20-22, Docket No. 32], and counsel for Kato stated at the hearing that, for purposes of this motion, it is not arguing that the non-compete agreement was supported by independent consideration after Hanley started his job at Kato.

Hanley's resigned his job at Kato and took a job with ABB, Inc. His last day at Kato was March 5, 2018. Docket No. 19-1 (Kato separation letter); Hanley Counterclaim ¶ 13, Docket No. 22. He started work at ABB on March 19, 2018. Hanley Decl. ¶ 41, Docket No. 32. Kato offered and on March 24, 2018 Hanley signed a

---

[2] Plaintiff's Motion for Expedited Discovery [Docket No. 38] has been withdrawn pursuant to Plaintiff's counsel's August 20, 2018 letter to the Court stating that the parties have agreed to Defendant Hanley's deposition on September 6, 2018.

separation agreement under which Kato was to pay him approximately $4,000 in consideration of the agreement within 14 days of its Effective Date.  Docket Nos. 44 (agreement), 19-1 (Kato separation letter).  Kato did not pay the stated amount to Hanley. Hanley Counterclaim ¶ 16, Docket No. 22; Kato Reply to Counterclaim ¶ 16, Docket No. 27.  On April 3, 2018 Kato's parent company, Nidec, sent a letter to a customer that it has in common with ABB regarding Kato's former employee Hanley who was now working for ABB and who may be on-site at the customer's location in his new position with ABB.  Docket No. 34-1.  There is no evidence now in the record that Hanley took, disclosed or used any of Kato's confidential or proprietary business information.

Kato filed a Complaint against Hanley on May 9, 2018 alleging breach of contract and seeking injunctive relief to enforce the terms of the non-compete and separation agreements signed by Hanley.  Docket No. 1.  Kato obtained a hearing date of October 25, 2018 on its request for a preliminary injunction.  Conneely Decl. ¶ 9 and Ex. F at 2, Docket Nos. 52, 52-6.  Hanley counterclaimed against Kato and filed a third-party complaint against parent company Nidec seeking declaratory relief that the non-compete and separation agreements are invalid and unenforceable.  July 11, 2018 Amended Answer, Counterclaim and Third-Party Complaint, Docket No. 22.  On August 13, 2018 Hanley filed this Motion for Temporary Restraining Order and Preliminary Injunction.  Docket No. 30.  After briefing by the parties, a hearing was held on August 23, 2018.  Docket No. 58.

**ANALYSIS**

When a party seeks a temporary restraining order or preliminary injunction, the Court considers the following factors: (1) the likelihood that the moving party will succeed on the merits; (2) whether the movant will suffer irreparable harm absent the injunctive relief; (3) the balance of harms if injunctive relief is granted or denied; and (4) the public interest.  *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).  This analysis requires a balancing of the four factors.  *Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1041 (8th Cir. 2003).

**I.      *Dataphase* Factors**

   **A.      Likelihood of Success on the Merits**

The Court finds that Hanley has demonstrated a fair likelihood of success on his claim for declaratory relief [Amended Answer and Counterclaim, Docket No. 22] that the non-compete agreement is invalid and unenforceable for lack of consideration because it was not signed at the inception of employment and is not ancillary to his initial employment.

Non-compete agreements are disfavored under Minnesota law but are enforceable if they serve a legitimate employer interest and are no broader than necessary to protect this interest.  *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 361 (Minn. 1998).  A non-compete agreement must be supported by independent consideration if it is not ancillary to an employment agreement.  *Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Canada, Ltd.*, 552 N.W.2d 254, 265 (Minn. Ct. App. 1996).  Under Minnesota law, continued employment alone is insufficient consideration to support

enforcement of a non-compete agreement against an already employed employee. *Menzies Aviation (USA), Inc. v. Wilcox*, 978 F.Supp.2d 983, 998 (D. Minn. 2013).

Kato first asserts that at this stage of the case with a very limited record, the Court cannot make any finding on the likelihood of success. However, likelihood of success on the merits is one of the four *Dataphase* factors, and it is always or often the case that only a limited record is available to the Court on a motion for temporary injunctive relief. Moreover, the Court is not adjudicating the merits of whether the non-compete is invalid for lack of consideration or on any other grounds.

Kato contends that the non-compete agreement is supported by adequate consideration because it was ancillary to Hanley's initial employment. Specifically, Kato asserts that the February 2, 2007 offer letter gave Hanley notice that he would be required to sign a non-compete agreement, and it is immaterial if Kato did not disclose or discuss any specific terms of that agreement with Hanley and did not present it to him until March 23 – 29 days after his February 22 acceptance of Kato's job offer and 11 days after he started work on March 12 – because Hanley does not claim that he ever asked for a copy of the agreement and thus Kato never denied Hanley an opportunity to learn the terms of the non-compete agreement. Counsel for Kato stated at the hearing that, for purposes of this motion, Kato makes no argument that the non-compete agreement was supported by independent consideration after Hanley started working for Kato. Kato also does not offer the Separation Agreement as separate consideration for the non-compete obligations.

Here, the key dates appear to be undisputed in the record: Kato's February 2 job offer letter, Hanley's February 22 acceptance, his March 12 start date, and the March

23 presentation of the non-compete agreement which Hanley signed that same day. There is no allegation by Kato, and no evidence in the record, that anyone discussed any terms of the non-compete agreement with Hanley before he was given and signed it on March 23.  There is also no evidence in the record that Kato provided independent consideration to Hanley for the non-compete after he started work, and Minnesota law is clear that mere continuation of employment is not sufficient consideration to support a non-compete agreement.  See *Davies & Davies Agency, Inc. v. Davies*, 298 N.W.2d 127, 130-31 (Minn. 1980).

The Court concludes that Hanley has demonstrated a fair likelihood of success on his claim that the non-compete agreement was not ancillary to his employment and therefore is invalid and unenforceable.  Mere knowledge that employment is contingent on signing a non-compete is not enough to make such an agreement ancillary to employment when its terms are not presented to the employee until after he has started work. See *Prime Vest Financial Services, Inc. v. Ruxer*, No. 05-1312, 2005 WL 1959505, at *1 (D. Minn. Aug. 15, 2005) ("although Plaintiff contends that Defendant Ruxer knew at his interview that he would have to sign a non-compete agreement, the mere knowledge of the existence of a non-compete agreement, without the opportunity to examine the agreement or to otherwise know the terms of the noncompete agreement before employment begins, does not render the Agreement enforceable") (citing *Davies*, 298 N.W.2d at 133, and *Midwest Sports*, 552 N.W.2d at 265-66)). Although it is true that the employee in *Davies* had "requested" a copy of the non-compete prior to starting work, but "was not given an opportunity to examine or inspect the document . . . until 11 days after he commenced employment . . . and 28 days after

6

he terminated his employment with his former employer," 298 N.W.2d at 133, the Court finds no authority in Minnesota cases for the proposition that an employee is required to make such a request or that if he fails to do so he is nonetheless deemed to have been given an "opportunity" to learn the terms of a non-compete agreement that the employer referred to in an offer letter but never actually gave him. Accordingly, on the record now before the Court, this factor weighs in favor of Hanley.

### B. Irreparable Harm

The Court finds that Hanley has not carried his burden of establishing that he will suffer irreparable harm absent the injunctive relief he seeks. To demonstrate irreparable harm, a party must show that the harm is "certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utilities Bd. v. FCC*, 109 F.3d 418, 425 (8th Cir. 1996). Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages. *Rogers Group, Inc. v. City of Fayetteville, Ark.*, 629 F.3d 784, 789 (8th Cir. 2010). Economic loss typically does not constitute irreparable harm. *Iowa Utilities,* 109 F.3d at 426. Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction. *Rogers Group*, 629 F.3d at 789.

As alleged and argued in his motion, Hanley's primary "irreparable harm" is his concern that he could lose his job or be stunted in his career growth. He alleges that his professional career has been disrupted by his inability to fully engage in his job at ABB, due to the specter of this lawsuit hanging over him and, in particular, over ABB's and Kato's shared customer, and by his inability to build other customer relationships.

Hanley also contends that the lawsuit and Kato's April 3, 2018 letter to its customer harmed his reputation, tagged him "with a professional scarlet letter," caused him emotional distress, and harmed his family and sense of self-worth. *See* Hanley Reply Br. 10-11, Docket No. 56.

Hanley's worry and distress, though understandable, are not so "certain and great and of such imminence" as to constitute a showing of non-compensable irreparable harm on the record now before the Court. He is still employed by ABB and there is no indication in the record that his employment will be terminated. ABB appears to be standing behind him by continuing his employment, giving him extensive training, and providing legal counsel to represent his (and ABB's) interests in this lawsuit. There is also some indication in the record that ABB knew of the non-compete agreement when it hired him. *See* Twardowski Decl. ¶ 13 (alleging Hanley told him he had shared the non-compete agreement with ABB and "they did not think it was an issue"), Docket No. 51. Accordingly, this factor favors denial of Hanley's motion.

### C. Balance of Harms

The Court finds that the balance of harms does not tilt decisively in favor of either granting or denying Hanley's motion for temporary injunctive relief. Neither party has demonstrated with any clarity how significant or lasting any purported harm would be. Here, the moving party is Hanley, rather than the typical case in which a former employer seeks to enjoin the employee from continuing to work at his new job. There is no evidence in the record that denying Hanley's motion will cause him to lose his job or to suffer other specific harms.

On the other hand, Kato argues that the particular mandatory injunctive relief Hanley seeks -- that Kato be ordered to send a letter to its customer basically stating that it lost and Hanley won this lawsuit, and that Hanley is not subject to the restrictions in the non-compete agreement -- would be "onerous" and could "not be undone in [its customer's] eyes" even if the injunctive relief is later reversed. Kato Br. 32, Docket No. 49. However, although the Court agrees that ordering such a letter would be extraordinary and is not appropriate relief here, as stated on the record at the hearing and discussed below in Section II, the Court also finds that Kato has not shown that it would suffer harm if the customer were told that Hanley was not subject to the non-compete restrictions.

### D. Public Interest

The Court finds that this factor does not favor either party for purposes of this motion, as there are competing public interests here. The public has an interest in judicial enforcement of contracts between private parties, including contracts that protect an employer's legitimate business interests. *Cherne Indus., Inc. v. Grounds & Assoc., Inc.*, 278 N.W.2d 81, 94 (Minn. 1979). The public interest also favors fair competition. *Benfield, Inc. v. Moline*, 351 F.Supp.2d 911, 919 (D. Minn. 2004).

Balancing all of the *Dataphase* factors, the Court concludes that Hanley's motion for temporary injunctive relief should be denied.

## II. Hanley's Requested Mandatory Injunctive Relief

The injunctive relief Hanley seeks includes a request that the Court order Kato to send a letter to Kato's and ABB's shared customer that contains several specific statements regarding Hanley's job duties for ABB and that the Court determined

9

preliminarily that Hanley is not subject to any restrictions in the non-compete agreement.  *See* Motion, Docket No. 30, and Addendum (proposed letter), Docket No. 31-1.  Ordering such a letter would be an extraordinary remedy that, in this case and on this record, is inappropriate, inaccurate and premature.

The proposed relief also reflects Hanley's flawed premise that such a letter is needed to correct statements Kato made in its April 3, 2018 letter to the customer. But Kato's letter contained no false statements, no inflammatory language, and did not state that Hanley was violated any contractual obligations.  Furthermore, to the extent the proposed letter would convey or suggest to the customer that the non-compete agreement is invalid, such a determination on the merits is beyond the Court's findings in this proceeding which were made for the purpose of assessing the *Dataphase* factors to determine whether Hanley's injunctive relief should be granted.

## RECOMMENDATION

The Court, being duly advised in the premises, upon all of the files, records and proceedings herein, and for the reasons stated above and on the record at the hearing, IT IS RECOMMENDED THAT Defendant's motion [Docket No. 30] be DENIED.

Dated:  August 24, 2018

*s/ David T. Schultz*
DAVID T. SCHULTZ
United States Magistrate Judge


## **NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Judge Davis's Order of Referral [Docket No. 37] of this motion stated that the parties will have a **shortened objection period** to allow for an expedited final ruling. A party may

file and serve specific written objections to the Report and Recommendation **within 7 days of the filing of the written Report and Recommendation** and a party may respond to those objections **within 7 days** after being served a copy of the objections. All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).